RAYMOND MAX BEENY, Appellant, *v.* CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, an inter-insurance exchange, existing under the law of California, Respondent.

No. 17607

CHARLES WILLIAMS, Appellant, *v.* FARMERS INSURANCE EXCHANGE, an inter-insurance exchange existing under the laws of California, Respondent.

No. 18460

March 30, 1988                                              752 P.2d 756

*Durney & Brennan,* Reno, for Appellant Raymond Max Beeny.

*Albert D. Massi,* Las Vegas, for Appellant Charles Williams.

*Beckley, Singleton, DeLanoy, Jemison & List, Daniel F. Polsenberg,* and *C. Eric Funston,* Las Vegas, for Respondents California State Automobile Association Inter-Insurance Bureau and Farmers Insurance Exchange.

## OPINION

*Per Curiam:*

### The Facts

On November 21, 1985, a motorist negligently crossed the center line and struck an automobile owned and driven by Ann Kaiser. Appellant Raymond Beeny, a passenger in Kaiser's car, was injured by the collision. The motorist causing Beeny's injury was underinsured. After settling with the tortfeasor for the policy limits of his liability insurance, Beeny pursued claims for his remaining damages against respondent California State Automobile Association (hereafter "CSAA"), which insured Ms. Kaiser and her vehicles.

Kaiser's single policy with CSAA covered four vehicles, including the one that was hit. She paid four separate premiums for her coverage under this policy. Her policy provided for $15,000 in uninsured or underinsured motorist (hereafter "UM") benefits and $10,000 in medical payment benefits for injury occurring in any of the four vehicles. Kaiser, her relatives, and passengers were covered by the policy for injuries caused by an underinsured motorist while in one of her insured vehicles.

Beeny argued that he was entitled to stack the UM and medical payment coverage on Kaiser's four vehicles and recover up to $60,000 in UM benefits and $40,000 in medical benefits. CSAA conceded that the named insured, Kaiser, could stack the coverages under the policy but argued that guest passengers were not entitled to stack under Kaiser's policy. According to CSAA's interpretation of its policy, Beeny could only recover up to $15,000 in UM benefits and up to $10,000 in medical benefits, the policy limits for the vehicle in which he was injured.

Beeny brought an action and moved for partial summary judgment on the issue of stacking. CSAA filed a counter-motion for summary judgment on this issue. The lower court found that CSAA's position was the majority rule of other jurisdictions and that Nevada would also disallow stacking by guest passengers. It therefore granted CSAA's counter-motion for summary judgment.[1]

### Discussion

We have previously held, on several occasions, that a person who purchases a multi-vehicle insurance policy or several policies may stack the policies' UM coverage. Rando v. Calif. St. Auto. Ass'n, 100 Nev. 310, 684 P.2d 501 (1984); Allstate Ins. Co. v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978); State Farm Mut. Auto. Ins. Co. v. Christensen, 88 Nev. 160, 494 P.2d 552 (1972); United Servs. Auto. Ass'n v. Dokter, 86 Nev. 917, 478 P.2d 583 (1970). But we have not yet considered whether a guest passenger, like a named insured, may stack coverage when he or she is injured in a vehicle covered by the named insured's multiple vehicle policy. These consolidated cases present this issue.

After consideration of the relevant provisions of the insurance policies and the arguments made by the parties, we conclude that Beeny and Williams, as guest passengers, cannot stack the UM and medical coverage benefits of the owners' insurance policies. Therefore, the decisions of the lower court are affirmed.

Our decision is based, in part, on the express provisions of the insurance agreements. For example, Kaiser's CSAA policy provides:

> We will pay damages for *bodily injury* which an *insured person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*.

---

[1]Williams' case involves the identical legal issue and it was also dismissed on summary judgment. In his situation, the driver of the vehicle had two separate policies, rather than one multi-vehicle policy. However, we deem this difference insignificant.

. . . .

(1) *"Insured person"* or "Insured persons" means:

(a) *You* or a *relative;*

(b) any other person *occupying your auto.*[2]

Under the terms of the policy, we note that two classes of insureds exists. "First, the named insured (and any relative); and second, any other person while occupying an insured automobile. To be insured, the latter must actually be occupants of an insured vehicle. . . . This is not true of the named insured. His coverage . . . is not tied to or limited by occupancy of an automobile." Sturdy v. Allied Mut. Ins. Co., 457 P.2d 34, 40 (Kan. 1969). Courts have generally labelled these two classes "class one insureds" and "class two insureds."

By the terms of the agreement, Kaiser, as a class one insured, was protected against uninsured motorists regardless of whether she was in a car, in her house, or on the street. Her UM coverage, although contained in her automobile insurance policy, is personal in nature and not tied to use of any of her vehicles.[3] At any given time, under the terms of the insurance, Kaiser was covered against uninsured motorists by all "four" of her policies,[4] and therefore was entitled to stack the UM benefits of these policies, if necessary.

On the other hand, by the very terms of Kaiser's policy, Beeny's UM coverage was tied to the vehicle he was in. It arose only because he was in a car Kaiser insured. Therefore, his entitlement to UM benefits, unlike Kaiser's, arose under the

---

[2]A similar provision governs medical benefits.

[3]As we noted in Rando v. California State Automobile Association, 100 Nev. 310, 315, 684 P.2d 501, 504 (1984), (quoting Emick v. Dairyland Ins. Co., 519 F.2d 1317, 1325-26 (4th Cir. 1975)):

> [T]he person is the subject of the coverage and it is not relevant that the protection afforded in the form of uninsured motorist coverage . . . is attached to a policy of motor vehicle liability insurance. . . . "[I]t is precisely the floating, personal accident insurance character of . . . uninsured motorists coverage which has led courts to ignore the fact that these coverages have been engrafted onto liability policies ensuring particular cars, and to hold that . . . stacking will be allowed."

[4]Although technically, in Beeny's case, only one policy existed, this policy provides "When two or more cars are insured under this policy, the terms of this policy shall apply separately to each." Analytically, this multi-vehicle policy can be viewed as four separate policies, each covering one vehicle. Therefore, for ease of explanation, we will discuss Kaiser's multi-vehicle policy as though it were four separate policies. However, the driver/owner in Williams' case had two separate policies, rather than a multi-vehicle policy, and the individual nature of the policies is evident without such an analytic construction.

terms of the one specific policy covering the car he occupied. Under the terms of the other "three" policies, he was not an insured. Because his coverage arose under only one policy, he is entitled to the UM benefits of only that policy, and not the policies covering the other vehicles.

We note that our decision is consistent both with the language of the policy and the majority of decisions by other state courts. Our research indicates that although only three states[5] have allowed stacking by guest passengers, at least fourteen other states[6] at this point have disallowed stacking by guest passengers. In concluding that guest stacking is impermissible, these fourteen courts have generally considered insurance policies similar to those now considered by this court.

Our logic in *Rando,* 100 Nev. 310, 684 P.2d 501, also supports this decision. In *Rando,* Stephanie Ritzer-Rando was a class one insured under a three-vehicle CSAA policy. This policy covered Rando for any injury or death she caused when using another person's vehicle. Rando killed Williams when using another person's vehicle. Williams' wife sued CSAA, claiming that Rando's personal injury coverage under the three-vehicle CSAA policy could be stacked.

In deciding *Rando,* we distinguished first-person coverage, in which the coverage "focuses on the person of the insured," from third-person coverage, which arises from the "use . . . of a vehicle." 100 Nev. at 314, 684 P.2d at 504. We noted that

---

[5]Calibuso v. Pacific Ins. Co., 616 P.2d 1357 (Haw. 1980); Barbin v. United States Fidelity and Guar. Co., 315 So.2d 754 (La. 1975); Kemp v. Allstate Ins. Co., 601 P.2d 20 (Mont. 1979).

[6]Moomaw v. State Farm Mut. Auto. Ins. Co., 379 F.Supp. 697 (S.D.W.Va. 1974); Holloway v. Nationwide Mut. Ins. Co., 376 So.2d 690 (Ala. 1979); American States Ins. Co. v. Kelley, 446 So.2d 1085 (Fla. Dist.Ct.App. 1984); Holland v. Hawkeye Sec. Ins. Co., 230 N.W.2d 517 (Iowa 1975); Sturdy v. Allied Mut. Ins. Co., 457 P.2d 34 (Kan. 1969); Ohio Casualty Ins. Co. v. Stanfield, 581 S.W.2d 555 (Ky. 1979); Auto-Owners Ins. Co. v. Traviss, 248 N.W.2d 673 (Mich.Ct.App. 1977); Murphy v. Milbank Mut. Ins. Co., 388 N.W.2d 732 (Minn. 1986); Hines v. Gov't Employees Ins. Co., 656 S.W.2d 262 (Mo. 1983); Lopez v. Foundation Reserve Ins. Co. 646 P.2d 1230 (N.M. 1982); Babcock v. Adkins, 695 P.2d 1340 (Okla. 1984); Utica Mut. Ins. Co. v. Contrisciane, 473 A.2d 1005 (Pa. 1984); Cunningham v. Insurance Co., 189 S.E.2d 832 (Va. 1972); Thompson v. Grange Ins. Assoc., 660 P.2d 307 (Wash.App. 1983). *See also* 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 13.11 (2d ed. 1985) (suggests guest passengers should not be allowed to stack).

Some of these cases involve "fleet" coverage of a large number of vehicles, rather than a coverage of three or four vehicles as is involved in this case. *See, e.g., Stanfield,* 581 S.W.2d 555. However, the principles involved in fleet cases are the same as in this case; the only difference is that the number of vehicles involved is greater.

although first-person coverage can be stacked, third-person coverage cannot. *Id.*

Kaiser's UM guest coverage is similar in nature to Rando's personal injury coverage. Beeny's UM coverage arose only because he was a guest in a particular vehicle; Rando's personal injury coverage arose only because she used a particular vehicle. Both coverages "essentially focus[ed] on a particular vehicle, without which the protection would not exist." 100 Nev. at 315, 684 P.2d at 504. Therefore, the logic behind *Rando* is consistent with our present conclusion that guest passengers cannot stack UM coverage of multi-vehicle insurance policies.

Our decision also produces a fair result. It does not limit Beeny, or any other class two insureds, to recovery under only the policy of the vehicle they occupy as guests. If they have their own vehicle policies, they will be covered as class one insureds under the UM provisions of their policies. Therefore, they can stack their own class one UM coverage with the additional class two coverage. Were we to allow guests to stack both their own and other's UM coverages, however, passengers would be allowed the benefits of "double stacking," which, in our opinion, would be an anomalous result.

For the above stated reasons, we affirm the summary judgment in both cases.