CLARA TORRES, APPELLANT, v. FARMERS INSURANCE EXCHANGE, A FOREIGN CORPORATION, RESPONDENT.

No. 20475

May 30, 1990                                        793 P.2d 839

*Albert D. Massi,* Las Vegas, for Appellant.

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas, for Respondent.

_____

**OPINION**

*Per Curiam:*

Respondent Farmers Insurance Exchange (Farmers) issued two

automobile insurance policies to appellant Clara Torres' (Torres) father. Torres was injured by an uninsured motorist and brought this suit to recover the uninsured motorist coverage limits under the policies. Farmers moved for a summary judgment limiting its liability to Torres on the basis of an anti-stacking clause contained in amendments to Torres' policies. The district court granted Farmers' motion and Torres appeals the district court's judgment. We reverse the judgment of the district court and remand this case for a determination of Ms. Torres' actual damages.

## FACTS

The basic facts are not in dispute. Ms. Torres' family owned two cars, a 1976 Datsun and a 1975 Dodge Dart, each of which was covered by a separate insurance policy issued by Farmers. Each of the two policies included uninsured motorist (UM) coverage limits of $15,000 per person or $30,000 per accident. Ms. Torres' father was the named insured who purchased the policies.

On or about January 2, 1986, Ms. Torres was injured by an uninsured motorist. Specifically, Ms. Torres was riding as a passenger on a friend's moped, which went out of control and crashed. Farmers has paid Torres $15,000 on one of her policies, representing the single person limit for UM coverage on that policy. Torres requested that the $15,000 UM coverage limits on her two policies be "stacked," *i.e.,* combined to add up to a total limit of $30,000. Farmers denied any further liability, claiming that an applicable anti-stacking clause limits its liability to the UM coverage limit under a *single* policy of $15,000.

On October 22, 1986, Torres filed her complaint against Farmers. The complaint demanded that the UM coverage limits on her two policies be stacked and also sought tort damages on the basis of bad faith refusal to settle an insurance claim. Farmers filed a motion to dismiss on the issue of stacking. The district court properly treated the motion as one for summary judgment. Torres filed a cross-motion for summary judgment on the same issue. In support of its motion, Farmers submitted a copy of the separate amendment containing the anti-stacking clause, but Farmers did not submit copies of Torres' actual insurance policies. Torres did not submit copies of the policies in her opposition and the district court did not request the policies. Thus, the insurance policies themselves are nowhere in the record of this case. On August 25, 1989, following a hearing, the court granted summary judgment to Farmers, concluding that the anti-stacking amendment met each of NRS 687B.145(1)'s three main requirements for validity, which are discussed below. Torres appeals the order granting summary judgment, raising only the single issue of the validity of the anti-stacking clause.

Exactly how or when Farmers amended Torres' policies to include the clause prohibiting stacking is not clear based on this record. Both parties assume, however, that, if valid, the anti-stacking clause was applicable to each of Torres' two policies. The anti-stacking clause is contained in a one-page amendment, or endorsement, which Farmers refers to as "Endorsement s6700." At the top of the page is the heading **"UNINSURED MOTORIST BENEFITS LIMITATION DUE TO OTHER INSURANCE."** This heading is in bolded, capitalized letters which are larger than the other lettering in s6700. Underneath this heading the anti-stacking clause appears as follows:

Under Part II—Uninsured Motorist Coverage it is understood and agreed that the provisions that follow in bold face limit the amount payable under this section:

Other Insurance

1. We will pay under this coverage only after the limits of liability under any applicable **bodily injury** liability bonds or policies have been exhausted by payment of judgments or settlements.

2. The amount of Uninsured Motorist Coverage we will pay under Additional Definitions 3b shall be to the extent the damages exceed the amount of any other **bodily injury** coverage available to any party held to be liable for the **accident.**

**3. EXCEPT AS PROVIDED IN PARAGRAPH 2 ABOVE, IF ANY OTHER COLLECTIBLE INSURANCE APPLIES TO A LOSS COVERED BY THIS PART, WE WILL PAY ONLY OUR SHARE. OUR SHARE IS THE PROPORTION THAT OUR LIMITS OF LIABILITY BEAR TO THE TOTAL OF ALL APPLICABLE LIMITS.**

4. We will not provide insurance for a vehicle other than your **insured car,** unless the owner of that vehicle has no other insurance applicable to this part.

**5. IF ANY APPLICABLE INSURANCE OTHER THAN THIS POLICY IS ISSUED TO YOU BY US OR ANY OTHER MEMBER COMPANY OF THE FARMERS INSURANCE GROUP OF COMPANIES, THE TOTAL AMOUNT PAYABLE AMONG ALL SUCH POLICIES SHALL NOT EXCEED THE LIMITS PROVIDED BY THE SINGLE POLICY WITH THE HIGHEST LIMITS OF LIABILITY.**

This endorsement is part of the policy. It supersedes and controls anything in the policy contrary. It is otherwise subject to all other terms of the policy.

The above quotation reproduces the bolding, capitalization and margins as they appear in s6700.

## LEGAL DISCUSSION

In this case, Ms. Torres is requesting inter-policy stacking of the UM coverage limits contained in two separate automobile insurance policies issued by the same insurer. The sole question presented by this appeal is whether the anti-stacking clause quoted above is valid under NRS 687B.145(1).[1] Farmers raises only its anti-stacking clause as a defense to liability. As the daughter of the named insured, Ms. Torres presumably is a Class I insured and, hence, is entitled to stack the UM coverage if the anti-stacking clause is invalid. *See generally* Beeny v. California State Auto Ass'n, 104 Nev. 1, 752 P.2d 756 (1988). This court has explained the concept of stacking of UM coverage in previous cases and we will not repeat that explanation here. *See, e.g.,* Allstate Ins. Co. v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978); Rando v. Calif. St. Auto. Ass'n, 100 Nev. 310, 684 P.2d 501 (1984). The anti-stacking clause applicable to this case is contained in paragraph five of s6700.

This court has substantively addressed the requirements of NRS 687B.145(1) in two previous cases: Neumann v. Standard Fire Ins., 101 Nev. 206, 699 P.2d 101 (1985); and State Farm Mutual v. Knauss, 105 Nev. 407, 775 P.2d 707 (1989). To be valid under NRS 687B.145(1), an anti-stacking clause must meet three principal requirements: the clause must express the limitation of coverage in clear language (clarity requirement); the clause must be prominently displayed in the policy or amendment (prominence requirement); and the insured cannot have paid a full double premium for each of the two or more separate UM coverages (requirement prohibiting double premiums). *Neumann,*

---

[1]NRS 687B.145(1) provides:

   1. Any policy of insurance or endorsement providing coverage under the provisions of NRS 690B.020 or other policy of casualty insurance may provide that if the insured has coverage available to him under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. Any provision which limits benefits pursuant to this section must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.

101 Nev. at 209, 699 P.2d at 103. Before addressing these three requirements, we discuss the preliminary problem of Farmers' failure to submit the bodies of Torres' two policies in support of its motion for summary judgment.

## I. *Farmers' failure to submit the bodies of Torres' two policies in support of its motion for summary judgment.*

In determining the validity of the anti-stacking clause, the district court considered only the anti-stacking clause itself, which was contained in amendments separate from the policies themselves. On appeal, Torres urges that it was error for the district court not to examine the bodies of the insurance policies before granting Farmers' motion for summary judgment. We agree. Although Torres failed to raise this objection to the district court, we address this serious issue under the doctrine of plain error.[2]

The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and of establishing entitlement to judgment as a matter of law. Shapro v. Forsythe, 103 Nev. 666, 668, 747 P.2d 241, 243 (1987). We have treated the clarity requirement of NRS 687B.145(1) as a question of law. *See Neumann* and *Knauss, supra.* Even on issues to be determined as a matter of law, however, the moving party must establish the foundational facts necessary to determine the issue. As explained below, *Neumann* requires the insurer to produce copies of both the insurance policies *and* the amendments containing the anti-stacking clauses. Thus, Farmers' failure even to produce the policies means that Farmers has failed to establish the non-existence of issues of material fact.

Farmers has also failed to establish entitlement to judgment as

---

[2]Torres undoubtedly should have, but failed to object to Farmers' failure to submit copies of the insurance policies in support of its motion. "Arguments raised for the first time on appeal need not be considered by this court." Montesano v. Donrey Media Group, 99 Nev. 644, 650 n.5, 668 P.2d 1081, 1085 n.5 (1983). Nevertheless, "[t]he ability of this court to consider relevant issues *sua sponte* in order to prevent plain error is well established." Bradley v. Romeo, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986) (citation omitted). An error is "plain" if "the error is so unmistakable that it reveals itself by a casual inspection of the record." Williams v. Zellhoefer, 89 Nev. 579, 580, 517 P.2d 789, 789 (1983). Even if Torres had not raised this issue on appeal, the absence of the insurance policies in this record would have been glaring indeed, given *Neumann's* clear requirement that courts compare the anti-stacking amendments with the bodies of the policies.

a matter of law. At trial, the burdens of persuasion and production on the issue of the validity of an anti-stacking clause prohibiting stacking of UM coverage limits rest on the insurer. An insured generally has a reasonable expectation that he or she will receive additional UM indemnification for each separate UM premium paid. *Maglish,* 94 Nev. at 703, 586 P.2d at 315. When an insured seeks stacking of UM coverage limits, we conclude that it is the insurer's burden to defeat this reasonable expectation by proving the validity of an anti-stacking clause according to the three requirements of NRS 687B.145(1). Proof of NRS 687B.145(1)'s three requirements will not be unduly burdensome for the insurer. It was Farmers' burden in seeking summary judgment to prove the validity of its anti-stacking clause.

Like *Neumann,* this is a case where the anti-stacking clause is not contained in the insurance policy itself, but, rather, in a separate amendment or endorsement to the policy. In such cases, even if the anti-stacking clause appears clear on its face, "a comparison of the original policy with the amendment is *necessary*" in order to assess the validity of the clause. *Neumann,* 101 Nev. at 209, 699 P.2d at 104 (emphasis added). Since Farmers bears the burden of establishing the validity of the anti-stacking clause, *Neumann* requires Farmers, at a minimum, to produce copies of *both* the anti-stacking amendment *and* the original insurance policies. Although it submitted copies of the anti-stacking clause, Farmers failed to submit copies of the bodies of Torres' two policies in connection with the motion for summary judgment. Because Farmers' failed to establish the validity of the anti-stacking clause, the district court erred in concluding that Farmers had established entitlement to judgment as a matter of law.

## II. *Analysis of the clarity of the anti-stacking clause under NRS 687B.145(1).*

Even assuming that the main bodies of Ms. Torres' two policies created no ambiguities, the anti-stacking clause must be stricken if the clause failed on its face to satisfy any of the three requirements established for such clauses under NRS 687B.145(1). On the one hand, the language contained in paragraph five states the anti-stacking message in a technically correct fashion. Additionally, we recognize that courts have enforced anti-stacking clauses containing similar language on the grounds that the language was not ambiguous under traditional principles of the law of insurance contracts. *See, e.g.,* Menke v. Country Mut. Ins. Co., 401 N.E.2d 539 (Ill. 1980). Despite *Menke,* we hold that, even when considered apart from the bodies of the

policies, the anti-stacking clause contained in paragraph five of s6700 fails to satisfy the clarity requirement of NRS 687B.145(1).

In *Neumann,* we held that NRS 687B.145(1) requires that the anti-stacking clause not only be unambiguous, but also not be *"difficult to understand,"* and that we must consider the clause from the perspective of a layperson, not a lawyer. *Neumann,* 101 Nev. at 209-10, 699 P.2d at 104 (emphasis added). Unlike the court in *Menke,* we are not applying common law principles of insurance contract relating to ambiguity. We are applying Nevada's specific and apparently unique statute as interpreted in *Neumann.* We believe that NRS 687B.145(1) must be strickly construed to require more than a simple lack of ambiguity. If the clarity requirement of this statute is to serve any purpose, we believe that the anti-stacking language must be *truly comprehensible to the average insured.* The purpose of the clarity requirement can only be to put insureds on actual notice of the true effect of anti-stacking clauses.

We conclude that the average insured, even if quite intelligent, simply will not realize the significance of the language used in Farmers' Endorsement s6700, however technically correct the language may be. Based on the construction of the clarity requirement stated above, therefore, the anti-stacking clause contained in s6700 is not sufficiently clear to satisfy NRS 687B.145(1).

We offer five reasons for our conclusion. First, paragraph five of s6700 fails to specify that the total UM coverage is limited to the highest coverage on any single *vehicle;* s6700 refers only to "THE LIMITS PROVIDED BY THE SINGLE *POLICY* WITH THE HIGHEST LIMIT*S* OF LIABILITY." (Emphasis added.) Referring to the *policy* limits rather than the single *vehicle* limit simply is not clear enough to inform the insured that coverage is limited on the basis of the single *vehicle* with the highest coverage limit. Additionally, the use of the plural form of the word "limits" is misleading since coverage is in fact limited to the highest *single* coverage limit on a *single* vehicle. Second, unlike the clearer clause in *Neumann,* s6700 fails to specify expressly that the limitation applies, *regardless of the number of separate UM premiums paid. See* 3 Schermer, Automobile Liability Insurance § 31.02[9] (2d ed. 1990); Lopez v. Foundation Reserve Ins. Co., Inc., 646 P.2d 1230, 1232 (N.M. 1982). Third, again unlike the clause in *Neumann,* s6700 fails to specify expressly that the limit applies *regardless of the number of vehicles covered.*

Fourth, s6700 fails to specify in a clear enough manner that the limitation applies to insurance issued by Farmers, rather than

other insurers. Torres makes a credible argument that a *combination* of factors in s6700 as a whole may mislead the insured into believing that the limitations in s6700 apply only to coverage by policies issued by *other* insurance companies. The factors are: (1) that s6700's heading refers to "other insurance;" (2) paragraphs one and three concern limitations on recovery based on coverage from *other* sources; and (3) paragraph five is placed at the *end* of s6700, after other paragraphs which do not concern insurance issued by Farmers.

Finally, we note that s6700 does not expressly state that the limitation applies regardless of whether the insureds' vehicles are covered under a single, multi-car policy, or under separate policies. We recognize that Ms. Torres' two policies were issued separately. Nevertheless, we feel constrained to point out that the phrase "ANY APPLICABLE INSURANCE *OTHER THAN THIS POLICY*" (emphasis added) would be unclear as applied to any insured who owned a single, multi-car policy. Upon reading this phrase, the owner of a single, multi-car policy would believe that the limitation did not apply to his or her *single* policy.

In view of the foregoing, we need not address the prominence or double premium elements of NRS 687B.145(1) as applied to this anti-stacking clause.

## CONCLUSION

It is the insurer's burden to establish the validity of an anti-stacking clause precluding stacking of UM coverage limits among separate UM coverages issued by the same insurer. Farmers failed to establish *any* of the three requirements for validity under NRS 687B.145(1), because it did not submit copies of the relevant policies in connection with its motion for summary judgment. Accordingly, the district court erred in concluding that Farmers had established entitlement to judgment as a matter of law. Even assuming, however, that the main bodies of the two policies contained no ambiguities, the anti-stacking clause contained in the amendment to Ms. Torres' policies is not sufficiently clear to be valid under NRS 687B.145(1). Thus, Farmers' anti-stacking clause was invalid as a matter of law. Ms. Torres is entitled to stack her two UM coverage limits for an additional $15,000 in UM coverage. Of course, Ms. Torres will be entitled to indemnification only to the extent that she proves her actual damages in excess of the $15,000 she has already received.

We hereby reverse the judgment of the district court, and remand this case for a determination of Ms. Torres' actual damages and for any other necessary proceedings consistent with this opinion.